UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISON
CRIMINAL ACTION NO. 5:19-CR-31-TBR

UNITED STATES OF AMERICA,                                              PLAINTIFF

v.

JIMMY LEON ABBOTT,                                                      DEFENDANT

**MEMORADNUM OPINION AND ORDER**

This matter is before the Court on Defendant Jimmy Leon Abbott's Motion to Suppress. [DN 23]. The Court conducted an evidentiary hearing on November 12, 2019 and both parties have submitted briefs in support of their position. [DN 33, 34]. This matter is ripe for adjudication. For the reasons stated herein, Defendant's Motion to Suppress, [DN 23], is DENIED.

**BACKGROUND**

In the fall of 2018, detectives with the Kentucky State Police ("KSP") and the Madisonville-Hopkins County Narcotics Unit began investigating Abbott for suspected methamphetamine trafficking. [DN 34 at 183]. Law enforcement utilized a confidential source to conduct four controlled purchases of methamphetamine from Abbott. *Id.* On December 13, 2018, detectives simultaneously arrested Abbott and executed a search warrant at his residence. *Id.*

Abbott was arrested at his workplace in Madisonville, Kentucky. [DN 33 at 172]. He was handcuffed, placed in a squad car, and read his *Miranda* rights. *Id.* Abbott admitted to selling methamphetamine, but when pressed for further details, he requested an attorney. [DN 34 at 183]. Detectives then transported Abbott to his home in Dawson Springs, Kentucky, approximately forty minutes away. [DN 33 at 172–73]. Detective Bryan testified that Abbott was not taken directly to the Christian County jail where he would be lodged because Bryan's "citations were not complete and the jail would not accept Abbott without the paperwork." [DN 34 at 184].

1

Upon arriving at the residence, Abbott was left in the police car while detectives joined the ongoing search. [DN 33 at 177]. At some point, Abbott was moved to a different police car. [DN 34 at 184]. However, the events following the transfer are disputed. According to Bryan, while Abbott was being moved to the second police car, Abbott asked Bryan what was going to happen to his girlfriend, Kayla Mitchell, who was home when the police arrived to execute the warrant. *Id.* Bryan replied that he did not know what would happen to Mitchell. *Id.* Some time later, Abbott tried to get Bryan's attention, either by motioning for Bryan from the police car or by informing another officer that he wanted to talk to Bryan. *Id.* When Bryan approached, Abbott again asked what would happen to Mitchell. *Id.* at 185. This time, Bryan stated, "Nothing if you tell me where your stash is at." *Id.* Abbott then stated that the drugs were located in the wheel well of his backhoe. *Id.* Police subsequently searched the wheel well and found approximately 62.2 grams of methamphetamine. *Id.*

In contrast, Abbott testified that while he was being transferred to the second police car, Mitchell herself informed him that she was going to jail. [DN 33 at 178]. Later, Bryan approached Abbott in the police car and said, "You want me to sit here and tear this place apart all night, or are you going to tell me where the stash is at?" [DN 27 at 128]. According to Abbott, he then offered to tell Bryan where the narcotics were located, if Bryan agreed not to charge Mitchell with any crimes. [DN 33 at 179]. Bryan agreed, and Abbott revealed the location of the methamphetamine. *Id.*

After the search was complete, Abbott was taken to the Christian County jail and charged with multiple drug-related offenses. [DN 34 at 182]. On May 14, 2019, he was indicted by a federal grand jury with one count of distribution of methamphetamine, one count of possession of methamphetamine, and one count of felon in possession of a firearm. [DN 1]. Subsequently,

Abbott filed a Motion to Suppress his statements to Bryan on the basis that his right to remain silent and his right to an attorney were violated. [DN 23; 33 at 180].

## LEGAL STANDARD

Pursuant the Fifth Amendment of the United States Constitution, an individual in custody of law enforcement has the right to request that interrogation cease until an attorney is present. *Edwards v. Arizona*, 451 U.S. 477, 481–82 (1981) (citing *Miranda v. Arizona*, 384 U.S. 436, 474, 86 S.Ct. 1602 (1966)). When a person in custody requests counsel, questioning cannot resume until either counsel is present or the person in custody voluntarily initiates a new dialogue with law enforcement authorities. *Wyrick v. Fields*, 459 U.S. 42, 45–46 (1982) (citing *Edwards*, 451 U.S. at 484–87). In order to resume questioning, the person in custody must knowingly and intelligently relinquish or abandon his or her known right to remain silent. *Edwards*, 451 U.S. at 482. The Court determines whether the waiver of the right to counsel is effective based "upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Id.* (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). The fruits of any questioning after a defendant has asserted his right to an attorney, and has not relinquished that right, must be excluded from evidence presented at trial. *Id.* at 487.

However, courts have established an exception to this rule where there is an independent source of the evidence. The doctrine of inevitable discovery is an exception to the exclusionary rule which "allows unlawfully obtained evidence to be admitted at trial if the government can prove by a preponderance that the evidence inevitably would have been acquired through lawful means." *United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995) (citing *Nix v. Williams*, 467 U.S. 431, 444 (1984)). In determining whether this exception applies, the district court, "viewing affairs as they existed at the instant before the unlawful search, [must determine] what would have

happened had the unlawful search never occurred." *Kennedy*, 61 F.3d at 498. The Court should "keep speculation at a minimum by focusing on 'demonstrated historical facts capable of ready verification or impeachment.'" *United States v. Ford*, 184 F.3d 566, 577 (6th Cir. 1999) (quoting *United States v. Leake*, 95 F.3d 409, 412 (6th Cir. 1996)). "The inevitable discovery exception to the exclusionary rule applies when the government can demonstrate *either* the existence of an independent, untainted investigation that inevitably would have uncovered the same evidence *or* other compelling facts establishing that the disputed evidence inevitably would have been discovered." *Kennedy*, 61 F.3d at 499 (emphasis in original).

## DISCUSSION

In this case, it is undisputed that Abbott invoked his right to an attorney shortly after being arrested. Thus, the issue is whether Detective Bryan violated Abbott's Fifth Amendment rights by failing to respect his invocation. First, Abbott claims that Bryan "orchestrated a coercive situation" by bringing Abbott back to his house during the execution of the search warrant rather than taking him straight to the Christian County jail. [DN 33 at 177]. Abbott contends that law enforcement should have known this environment "was reasonably likely to lead to an incriminating statement despite the fact that Abbott asked for an attorney." *Id.* Second, Abbott claims his right to an attorney was violated when Bryan initiated a conversation with Abbott in which he insinuated he would "tear up" Abbott's home and arrest his girlfriend if Abbott did not tell him where the methamphetamine was hidden. *Id.* at 179. In response, the Government contends that Abbott's rights were not violated because Abbott initiated communication with Bryan when he inquired whether Mitchell would be arrested, or alternatively, because Abbott testified he was coerced to reveal the location of the methamphetamine based on his fear of Mitchell going to jail, not Bryan's statements. [DN 34 at 188–89].

4

"A suspect subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning." *Perreault v. Smith*, 874 F.3d 516, 519 (6th Cir. 2017) (quoting *Miranda*, 384 U.S. at 444). "If the suspect invokes that right, police must stop questioning him until his attorney arrives." *Id.* (quoting *Edwards*, 451 U.S. at 484–85). Moreover, the Supreme Court prohibits "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *McKinney v. Hoffner*, 830 F.3d 363, 370–71 (6th Cir. 2016) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)). However, if after invoking their right to counsel, the "suspect initiates a case-related discussion, 'the right to have a lawyer present can be waived'" and police may resume questioning. *Bachynski v. Stewart*, 813 F.3d 241, 246 (6th Cir. 2015) (quoting *Wyrick v. Fields*, 459 U.S. 42, 46 (1982)).

In this case, it undisputed that Abbott invoked his right to counsel before arriving at the residence. Moreover, after reviewing witness testimony, the Court is unpersuaded that Abbott somehow signaled Bryan to return to the police car in order to initiate a case-related discussion. [DN 27 at 98, 114, 116, 138]. Instead, the Court finds that Bryan approached Abbott and stated, "You want me to sit here and tear this place apart all night, or are you going to tell me where the stash is at?" *Id.* at 128. Bryan's statement amounts to direct questioning reasonably likely to elicit an incriminating response. Thus, the Court finds that Abbott's right to have an attorney present during questioning was violated.

Despite this violation, the methamphetamine seized as a result of Abbott's statement is admissible pursuant to the inevitable discovery rule. In order for the inevitable discovery rule to apply, the Government must prove by a preponderance of the evidence that the methamphetamine would have inevitably been acquired through lawful means. *Kennedy*, 61 F.3d at 497. It is

5

undisputed that police were executing a valid search warrant for Abbott's residence at the time the methamphetamine was discovered. [DN 34 at 191]. Moreover, at the time Abbott arrived at the residence, officers were actively searching the backhoe, but had not yet examined all of its compartments or undercarriage. [DN 27 at 102–04, 145]. Additionally, Detective Crump testified that a confidential source had "observed a large quantity of crystal methamphetamine in the backhoe." *Id.* at 141. Furthermore, during a controlled purchase, Detective Crump witnessed Abbott walking from the direction of the backhoe toward his trailer in order to complete the transaction. *Id.* Given this information, it is clear that police intended to search every aspect of the backhoe for narcotics. Finally, Deputy Ross testified that after the methamphetamine had been removed from the backhoe, he ran his K-9 partner around the equipment and the dog indicated the presence of narcotics. *Id.* at 151–53. Thus, if the officers had not been able to locate the methamphetamine in the wheel well, the K-9 would have alerted officers to its location. *Id.* Based on this evidence, the Court finds the Government has met its burden in establishing that the methamphetamine would have inevitably been acquired through the lawful execution of the search warrant. Thus, the Motion to Suppress is DENIED.

## CONCLUSION

For the reasons stated herein: **IT IS HEREBY ORDERED**, Defendant's Motion to Suppress, [DN 23], is **DENIED**.

**IT IS SO ORDERED.**

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge
United States District Court**

January 17, 2020

CC: Attorneys of Record